# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BEVERLY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-353-FHS-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Beverly Thomas requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born September 6, 1958, and was fifty years old at the time of the administrative hearing. (Tr. 28). She graduated high school and attended special education classes (Tr. 193), and has worked as a cashier, convenience store owner, and manager (Tr. 53-54). The claimant alleges inability to work since April 1, 2005, due to depression and inoperable disc disease. (Tr. 187).

### Procedural History

On September 20, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 29, 2009 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the additional limitations of only occasionally climbing, balancing, bending, stooping, crouching,

kneeling, and crawling; only performing moderately complex work; and only superficial contact with co-workers and supervisors, with minimal public contact. (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, assignment clerk, radio dispatcher, semiconductor, clerical mailer, and optical goods assembler. (Tr. 22).

**Review**

The claimant contends that the ALJ erred by (i) failing to consider all the evidence in the record due to an incomplete transcript, (ii) failing to find that claimant's impairments meet all the criteria for a listing, (iii) failing to perform a proper credibility analysis, (iv) failing to properly determine her RFC, and (v) failing to identify jobs the claimant can perform despite *all* her limitations. The undersigned Magistrate Judge finds that the ALJ *did not* perform a proper assessment at step four, and the decision of the Commissioner should therefore be reversed.

The medical evidence reveals that the claimant has the severe impairments of degenerative disc disease of the lumbar and cervical spine, obesity, depression, personality disorder, and substance abuse in remission since January 2007. (Tr. 15). The claimant's mental impairments and substance abuse problems are well-documented in the record. On February 22, the claimant was admitted to Wagoner Community Hospital due to an amphetamine-induced psychotic episode, and was also noted to be depressed. (Tr. 354-359). She was assessed as having a Global Assessment of Functioning ("GAF") of 30 upon admission. (Tr. 354-359). The claimant was treated at

the Bill Willis Community Mental Health and Substance Abuse Center for poly-substance abuse, and was discharged from the program on August 24, 2006, because she failed to continue with the program. (Tr. 388). On February 16, 2006, the claimant had a GAF of 45; on February 21, 2006, she had a GAF of 49; on March 29, 2006, she had a GAF of 55; and on May 25, 2006, the claimant had a GAF of 50. (Tr. 393). While participating in the program, the claimant attended several individual and group therapy sessions. (Tr. 390-392; 402-404). In April 2007, a consultative examiner performed a Mental Status evaluation. (Tr. 407-410). Beverly Thomas diagnosed the claimant with major depression, recurrent; alcohol abuse/dependence, in early remission; methamphetamine abuse, in early remission; and borderline personality disorder. Ms. Thomas stated that the claimant's condition was "not expected to improve significantly within the next twelve months over her current state." (Tr. 409).

As to her physical impairments, the claimant saw consultative examiner Dr. David Wiegman on March 18, 2006. He found that her back pain was likely due to degenerative disc disease, that she had right arm weakness and numbness and a possible decreased ability to grasp, as well as depression. (Tr. 374). In April 2007, the claimant saw another consultative examiner, who noted her history of depression, Bell's palsy, rheumatoid arthritis, and osteoporosis, and found that she had full range of motion and a normal gait. (Tr. 415). A February 2008 bone scan revealed normal bone density, and a note on the record indicates that the claimant was to stop taking medication for osteoporosis. (Tr. 559).

At the administrative hearing, the claimant testified that she cannot work because she has constant pain to where she cannot sit or stand for long periods of time, she can only walk half a city block, and family does most of her shopping for her. (Tr. 30-31). She further testified that she has degenerative disc disease in her neck and spine; that her neck problems started in 2002 and cause constant pain and stiffness at the base of her neck; and that she takes prescription pain relievers and anti-inflammatories, but they do not eliminate the pain. (Tr. 31-35). Additionally, she stated that she experiences intermittent numbness down the right side of her body, as well as occasional spasms in her neck. (Tr. 35-36). She stated that she also frequently has trouble gripping with her right hand, which started around 2002. (Tr. 45). The claimant also stated that her lower back problems caused pain in her hips. (Tr. 37). As to her mental impairments, the claimant testified that she had a history of drug and alcohol abuse—specifically methamphetamine—but had ceased taking drugs by January 2007; that she suffers from depression, and had "suicidal phases"; that she does pretty well when she is taking her medications, but that she has a history of stopping her medication when she starts to feel better, which causes further problems; and that she has been diagnosed with anxiety, and has panic attacks approximately once a week. (Tr. 38-44). The ALJ questioned the claimant as to part of the record (Tr. 392) stating that her past drug use included 20 years of marijuana use, 2 years of methamphetamines, 31 years of valium, and 15 years of alcohol use, but the claimant stated that the information on that document was incorrect, and specifically that she had only used marijuana once or twice. (Tr. 48-49). As to her daily activities, the claimant testified that she lies down several times during the day, for

an approximate total of four to five hours; and that she has to "double up" her medication to leave the house for doctor's visits or appointments. (Tr. 46-48).

In the credibility analysis of his written opinion, the ALJ cited Social Security Regulations 96-4p and 96-7p, as well as 20 C.F.R. §§ 404.1529, 416.929, but did not list the requirements in these regulations. (Tr. 19). He then summarized the claimant's hearing testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20). The ALJ then discussed some of the medical evidence, and ultimately concluded that the claimant's conditions were not as severe as alleged because there were times she either did not appear for appointments or refused treatment, and despite recent problems with osteoporosis, recent bone density tests were normal. (Tr. 21).

A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may

not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The ALJ's credibility determination failed to meet these standards.

First, the ALJ referred to the credibility factors set forth in Social Security Ruling 96-7p, 20 C.F.R. §§ 404.1529, 416.929, but not did even mention *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) or list the credibility factors, and further failed to apply them to the evidence.[2] He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but even a mere recital of the factors is insufficient. *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC.

---

[2] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at 3, 1996 WL 374186 (1996).

In addition to the errors in assessing the claimant's credibility, the ALJ wholly ignored the numerous GAF scores in the record ranging from 30 to 55. (Tr. 354). "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. The ALJ should have considered whether the claimant's substandard GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Instead, the ALJ wholly ignored evidence that did not support his conclusion. *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)

Because the ALJ failed to properly analyze the claimant's credibility, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. Also, the ALJ should properly analyze whether the claimant's substandard GAF scores reflected occupational limitations; if such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma